IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM A., individually and on behalf of A.A., a minor, <br><br> Plaintiff, <br><br> v. <br><br> BLUECROSS BLUESHIELD of TEXAS, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 1:24-cv-04174 <br><br> Honorable Robert W. Gettleman |

**BLUE CROSS AND BLUE SHIELD OF TEXAS'S COMBINED MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Martin J. Bishop, 6269425
Rebecca R. Hanson, 6289672
Taylor Marcusson, 6342379
Crowell & Moring LLP
300 N. LaSalle, 25th Floor
Chicago, Illinois 60611
Tel: 312.321.4200
Email: mbishop@crowell.com
Email: rhanson@crowell.com
Email: tmarcusson@crowell.com

*Counsel for Blue Cross and Blue Shield of Texas*

Pursuant to Federal Rule of Civil Procedure 52 ("Rule 52"), Defendant Blue Cross and Blue Shield of Texas, a division of Health Care Service Corporation, a Mutual Legal Reserve Company ("BCBSTX") respectfully moves this Court for judgment on Plaintiff William A.'s ("Plaintiff") claim for benefits under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") and for violation of the Mental Health Parity and Addiction Equity Act ("Parity Act") as alleged in his Complaint ("Compl.") (ECF No. 1).

## I.       INTRODUCTION.

This dispute relates to coverage of residential treatment center ("RTC") care that A.A. received at Elevations Residential Treatment Center ("Elevations") from November 18, 2021, through May 16, 2023. This case raises two issues, which should be resolved in BCBSTX's favor.

First, relating to Count I, BCBSTX properly denied A.A.'s claim for benefits under Plaintiff's health plan ("Plan") because A.A.'s continued treatment at the RTC level of care was not medically necessary. BCBSTX approved 27 days of A.A.'s treatment at Elevations, and the administrative record shows that as of November 18, 2021, A.A. no longer exhibited the severe symptoms that had previously warranted 24/7 intensive treatment and could have safely stepped down to a Psychiatric Day Treatment Facility ("PDTF").

Second, relating to Count II, BCBSTX did not violate the Parity Act. BCBSTX used criteria for mental health and medical/surgical services developed using the same evidence-based process, and there is no evidence that BCBSTX applied mental health criteria more stringently. This Court should enter judgment in BCBSTX's favor on both Counts.

## II.      FACTUAL BACKGROUND.[1]

The Plan covers a continuum of mental health care ranging from the most intensive level

---

[1] BCBSTX incorporates the facts in its Proposed Findings of Fact ("PFF") filed contemporaneously and includes this brief recitation for the Court's convenience.

(inpatient hospital) to the least intensive (outpatient services),[2] with RTC treatment falling in the middle. PFF ¶¶ 5-6. Services must be "Medically Necessary" for coverage, meaning that services are "required, in the reasonable medical judgment" of BCBSTX for the treatment of a condition, and the service "is the most efficient and economical service" able to "be safely provided." *Id*. ¶ 8. This definition applies to mental health and medical/surgical services. *Id*. BCBSTX evaluated the medical necessity of A.A.'s request for RTC coverage using the Milliman Care Guidelines ("MCG") for Residential Behavioral Health ("MCG for RTC"). The MCG for RTC and for RTC's medical/surgical analogue, skilled nursing facilities ("SNF"), are developed using the same evidence-based approaches, editorial processes, and evidentiary standards. *Id*. ¶ 10.

Under the MCG for both RTC and SNF, care is medically necessary when the patient's symptoms are not so intense as to require hospital care but are intense enough that outpatient services are inappropriate. *Id*. ¶ 16. Under the MCG for RTC, a patient must be a danger to themselves or others or have ███████████████████████████████████████ ████████████████████ abilities, such as avoidance of nearly all social interactions or failure of all self-care. *Id*. ¶¶ 11-12. The MCG for RTC does not require that a member's symptoms resolve to warrant discharge; rather, the MCG asks whether the symptoms are manageable at a lower level of care, as shown, in part, by whether the member's thoughts of suicide or harm are absent or manageable at a lower level of care, and that functional impairments to activities essential to sustaining life, such as eating or drinking, are absent or manageable at a lower level of care. *Id*. For SNF, the MCG require that the patient has ████████████████████████ *Id*. ¶ 8.

A.A. received covered inpatient treatment from July 7 to August 12, 2021, immediately followed by covered RTC services through October 20, 2021. *Id*. ¶¶ 31-32. The next day, A.A.

---

[2] This includes services provided at a Partial Day Treatment Facility ("PDTF") which provides up to 20 hours of intensive care a week. PFF ¶ 6.

admitted to Elevations ████████████████████████████████████. *Id.* Elevations sought authorization for coverage of RTC from BCBSTX on ████████ on these bases. *Id.* ¶¶ 25-29. BCBSTX initially authorized coverage, and did so again on ████████ noting that, at that point, A.A. ████████████████████████████████ *Id.* ¶¶ 23-26. BCBSTX authorized coverage from ████████████████████, based on its conversations with A.A.'s provider at Elevations who, during that time, reported A.A. struggled with ████████████ ████████████████████████████████. *Id.*; *see also id.* ¶ 24.[3]

████████████████ BCBSTX held a peer-to-peer review with A.A.'s provider, during which the provider told BCBSTX that A.A. was calm, ████████████, participating in treatment, ████████████████████ and was not a safety concern. *Id.* ¶¶ 25-59, 29 (noting he had ████████████████████ prior to that point). Based on this review, BCBSTX decided that RTC-level care was not medically necessary ████████████████ and he could have safely continued treatment at a lower level of care. *Id.* ¶¶ 25-59.

A.A.'s medical records at Elevations indicate that A.A.'s symptoms did not warrant RTC care. Elevations largely noted that A.A. ████████████████████████; he learned coping mechanisms to manage his symptoms, and even trained for a triathlon. *Id.* ¶¶ 30-59. A.A. took many off-campus visits, including to the pool and rock climbing. *Id.* ¶¶ 38-44, 53-55. A.A. had family visits, which Elevations noted were successful. *Id.*; ECF 66 at 34.

A.A. was a target of unchecked bullying. *Id.* ¶¶ 44-46. A.A. told his parents, and his outside psychiatrist noted mistreatment by Elevations' staff. *Id.* Elevations' lack of oversight caused A.A. to witness two patients harming themselves. *Id.* ¶¶ 52-53. On one occasion, A.A. claimed his ████



---

[3] In his brief, Plaintiff claims A.A. was not admitted to Elevations for suicidal ideation, but his PFF concedes A.A. he was. ECF 64 ¶ 49 (' ████████████████████████████████

 had emerged, but ███████████████████████████████████, and Elevations did not address ██████████████████████. Later that day, Elevations noted A.A. was ██████ ████████████████. ECF 66 at 33.

On May 6, 2022, Plaintiff appealed BCBSTX's denial of coverage. *Id.* ¶ 27. BCBSTX upheld its denial. *Id.* ¶ 28. Plaintiff later submitted additional records to the Texas Department of Insurance ("TDI"), seeking an external review. *Id.* ¶¶ 50, 56-59. On September 18, 2022, an independent, external reviewer board certified in psychiatry upheld BCBSTX's denial, finding that A.A. was medically stable, compliant with medications, cooperative with care and not behaviorally dysregulated and could have been safely treated at a lower level of care. *Id.* ¶ 58.

## III. LEGAL STANDARD.

Rule 52 permits a trial on the papers for the court to weigh the evidence, make conclusions, and resolve factual disputes. *Oye v. Hartford Life & Accident Ins. Co.*, 140 F.4th 833, 836 (7th Cir. 2025); *Jones v. Unum Life Ins. Co. of Am.*, No. 24 C 3911, 2026 WL 96985, at *2 (N.D. Ill. Jan. 13, 2026). This Court conducts a *de novo* review of an ERISA case and makes an "independent decision" about Plaintiff's entitlement to benefits. *Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 304 (7th Cir. 2020) (internal citation and quotation marks omitted). Plaintiff bears "the burden of proving entitlement to those benefits" by a preponderance of the evidence. *Jones*, 2026 WL 96985, at *2 (citing *Oye*, 140 F.4th 833 at 837) (internal citation and quotation marks omitted).

## IV. ARGUMENT.

### A. Plaintiff Is Not Entitled To Plan Benefits and Count I Fails, As A Result.

Plaintiff cannot demonstrate that he is entitled to Plan benefits because A.A.'s continued stay at Elevations was not medically necessary under the terms of the Plan and because BCBSTX's alleged procedural errors are irrelevant to Plaintiff's claim for benefits. As demonstrated below, BCBSTX is entitled to judgment in its favor on Count I, as a result.

4

**1.      *A.A.'s Continued Stay at Elevations Was Not Medically Necessary.***

Plaintiff's claim for benefits under ERISA fails because he cannot show by a preponderance of the evidence that A.A. required RTC coverage after November 17, 2021. *Jones*, 2026 WL 96985, at *2. Plaintiff must show that A.A.'s symptoms were unmanageable at a lower level of care, as demonstrated by whether A.A.'s risk status, shown by an inability to participate in treatment, unmanageable thoughts of hurting himself or others, or functional status (*i.e.* an impairment to activities of daily living), were unmanageable at a lower level of care. PFF ¶ 13.

Here, Plaintiff cannot establish he is entitled to Plan benefits because the record shows that discharge was appropriate as of November 17, 2021. At the time of admission in October 2021, Elevations indicated A.A. required RTC care because of ███████████████████████ ██████████████████████████████████████████ *Id.* ¶¶ 24, 26; ¶¶ 27-29. But, by November 17, these issues had improved and A.A. was participating well in treatment and Elevations noted that A.A. was able to manage ███████████████ well. *Id.* ¶ 30; *see* ¶¶ 24, 30-32 (Elevations' report to BCBSTX). Thus, by November 18, Elevations' concerns about A.A.'s ████████████████████████████████ ████████████████ had eased, and the record lacks evidence of severe symptoms requiring continued 24/7 care under the MCG for RTC. *Id.* ¶¶ 13, 30-32, 34-45, 51-55.

After November 18, 2021, while A.A. occasionally ████████████ and interpersonal challenges with peers, Elevations frequently described A.A. as calm, compliant, and engaged in treatment. *Id.* ¶¶ 38-40, 43-44, 51-55. Through his discharge in May 2023, A.A. had no suicidal or homicidal ideation. *Id.* A.A. did not have issues with activities of daily living and had positive off-campus outings. *See id.* ¶¶ 38-40, 43-44, 51-55 (stating "████████████████████████"). He even completed a triathlon. *Id.* ¶¶ 44; 51-55. Thus, A.A. met the discharge criteria in the MCG

for RTC because his symptoms that warranted RTC had improved and had become manageable at a lower level of care, as confirmed by the external, independent review. *Id.*; *see also id.* ¶ 13.

Courts have held that RTC was not medically necessary under similar plan terms where the patient's symptoms were far more severe than A.A.'s. *C.T. v. BlueCross BlueShield of Illinois*, 23 CV 6112, 2025 WL 4092204, at *8 (N.D. Ill. Apr. 17, 2025) (finding RTC not medically necessary even though the patient had outbursts of aggression and harmed animals); *L.C. v. Blue Cross & Blue Shield of Tex.*, 2:21-cv-319, 2023 WL 1930227, at *15-16 (D. Utah Feb. 10, 2023) (continued RTC not medically necessary despite homicidal ideation); *Christina M. v. United*, 1:22-CV-0136, 2024 WL 4534687, at *13 (D. Utah Sept. 23, 2024) (RTC not medically necessary where member had hallucinations). A.A.'s symptoms were much less severe, and this Court should find that A.A.'s symptoms did not warrant RTC after November 17, and grant judgment in BCBSTX's favor. *See also Mike G. v. Blue Cross Blue Shield of Tex.*, 2:17-CV-347, 2019 WL 2357380, at *14 (D. Utah June 4, 2019); *Christine S. v. Blue Cross Blue Shield of N.M.*, 2:18-cv-874, 2021 WL 4805136, at *5 (D. Utah Oct. 14, 2021) (similar); *J.M. v. United Healthcare Ins. Co.*, 21-CV-6958 (LGS), 2023 WL 6386900, at *8 (S.D.N.Y. Sept. 28, 2023) (similar).

The record demonstrates A.A. ███████████████, but this was mostly due to Elevations' mismanagement—including unchecked bullying by other patients (PFF ¶¶ 44-46 (instances where peers antagonized A.A.)), Elevations' mistreatment of A.A. and other patients (*id.* noting instances of physical abuse), and A.A.'s witnessing of self-harm by other patients. *Id.* Courts have found that such issues caused by an RTC do not establish that RTC treatment was medically necessary. *See, e.g.*, *C.T.*, 2025 WL 4092204, at *9 (events that are "a condition for which [the RTC] is responsible … does not justify RTC-level care."); *L.C.*, 2023 WL 1930227, at *15 (similar); *Christina M.*, 2024 WL 4534687, at *13 (member's distress caused by Elevations

6

was not evidence RTC was medically necessary). These issues also did not harm A.A.'s ability to participate in treatment: he was calm, trained for a triathlon, and engaged in treatment. PFF ¶¶ 38-40, 43-44, 51-55.[4] A.A.'s level of symptoms simply did not meet the MCG for RTC and discharge to a lower level of care was appropriate. BCBSTX's denial was correct, as a result.

Plaintiff makes three unavailing arguments in claiming A.A. met the Plan's terms for continued RTC. First, Plaintiff argues that A.A. did not meet the MCG for RTC's criteria for discharge because of ██████████████████ Plaintiff largely points to the record *during the period that BCBSTX covered* in support of that argument. ECF 63 at 5-6; ECF 66 at 34-35 (referring to A.A.'s ████████████ with peers within the period BCBSTX covered). Plaintiff ignores that A.A.'s symptoms from the covered period sharply contrast to his symptoms during the rest of his stay. *Compare* PFF ¶¶ 21-29 (████████████████████████████

████████████████) *with id.* ¶¶ 35-56 (starting in mid-November, A.A. ████████████

████████████████████████); *see also*, *L.C.*, 2023 WL 1930227, at *15-16 (continued RTC not medically necessary where member improved). ███████████

████████████████████████████████. Elevations even allowed A.A. off campus the next week, further supporting that A.A. could be safe. PFF ¶¶ 35-55. BCBSTX thus correctly denied coverage for RTC after November 17, 2021. *See C.T.*, 2025 WL 4092204, at *8 (RTC not medically necessary where member progressed during covered period).

Second, with respect to the few instances Plaintiff points to from after November 18, these incidents do not demonstrate that A.A. could not manage his symptoms at a lower level of care. Plaintiff asserts A.A. had social issues; ████████████████████████ ████████ that, on one occasion he had ████████████ and had home visits that Plaintiff

---

[4] Additionally, A.A.'s mostly successful off-campus activities and home visits further show that A.A. was able to manage his mental health issues. *See J.M.*, 2023 WL 6386900, at *8.

claims "did not go well." *See* ECF 63 at 5-6. Overall, Plaintiff's focus on these sporadic issues ignores that the MCG for RTC does not require a lack of symptoms to justify discharge, but rather that symptoms are "███████" at a lower level of care. PFF ¶ 13; *see C.T.*, 2025 WL 4092204, at *7, 9 (RTC can be not medically necessary where symptoms persist, where member was doing well and was participating in treatment) (citing *Christina M.*, 2024 WL 4534687, at *10).

For example, Plaintiff notes that A.A. ██████████████ as evidence that A.A. had symptoms unmanageable at a lower level of care, but there is no evidence these isolated instances risked the safety of A.A. or others nor were severe enough to impair his functional status. ECF 63 at 6. Plaintiff states A.A. "██████" with peers by isolating and fronting (the latter of which Plaintiff does not detail), but the record actually shows that A.A. was a victim of unchecked bullying while at Elevations; importantly Elevations' failure to address that issue cannot justify coverage of RTC care. *C.T.*, 2025 WL 4092204, at *9 (RTC's inaction towards bullying "does not justify RTC-level care"). Plaintiff fails to explain why an intermittently isolating teenager cannot be treated at a lower level of care. *L.C.*, 2023 WL 1930227, at *15-16 (noting a teenager's choice to isolate does not necessarily require continued RTC). The record also establishes that A.A actively engaged with peers most of the time. PFF ¶¶ 38-41, 43-45, 51-55. Any social issues were not severe enough to impair A.A.'s functional status, nor unmanageable at a lower level of care.

Plaintiff cites to a handful of days where A.A. ████████████████████████████ ████████████████████████████ ECF 63 at 6. But Plaintiff ignores that Elevations contemporaneously reported that A.A. was calm, compliant, engaging in treatment, and left on off-campus trips. ECF 66 at 35. A.A.'s symptoms were manageable at a lower level of care.[5]

---

[5] To the extent Plaintiff uses this statement to prove A.A.'s home visit was unsuccessful, this statement is not relevant to the home visit; it is a general statement A.A. made to his therapist. ECF 66 at 35. "███ ████" felt A.A.'s home visit went well. *Infra* at 10.

Plaintiff's citation of A.A.'s ████████████ fares no better because there is no evidence that A.A. ████████ while at Elevations, nor in 8 months prior to admission. *See Christina M.*, 2024 WL 4534687, at \*10 (history of self-harm without more does not require RTC); ECF 66 at 34 (noting A.A. last self-harmed in February 2021). Plaintiff also notes A.A. had "████████████" and alleged "████████████," but in context, these statements do not warrant RTC care. ECF 63 at 6. A.A.'s ████████████ was merely an "████████████" statement, not a hallucination or psychosis, and Elevations reported on the same day that A.A. was calm, compliant, and engaging with peers. ECF 66 at 34-35. While A.A. thought he had "██████ ████████" on one occasion, he had just suffered a concussion from an Elevations ski trip and was described by Elevations later that day as happy and "████████" socially. *Id.* at 35. These incidents do not warrant RTC care. *Christina M.*, 2024 WL 4534687, at \*10 (RTC not medically necessary even where patient hallucinated because there was "no indication that his safety or ability to function was threatened such that he required 24/7 care.").

Plaintiff also asserts that A.A.'s conflict with his family and purported failed trips home warranted RTC coverage. But the records from A.A.'s home visits shows that "████████" felt his visits went well. ECF 66 at 34 (noting A.A.'s ████████████████████████████); *see Mike G.*, 2019 WL 2357380, at \*14 (the fact member left off-campus reflected continued RTC was not medically necessary). A.A.'s concerns about his dad owning a gun is nothing more than a rational concern based on different values. ECF 66 at 34 (A.A.'s worry about this "████████" disagreement). In the context of the record, Plaintiff's incidental references do not show that RTC was medically necessary after November 17. A.A.'s symptoms were "████████" at a lower level of care after November 17, 2021, and BCBSTX's denial was correct. *See, e.g., C.T.*, 2025 WL 4092204, at \*7 (RTC not medically necessary for member with social issues who is participating); *Christina*

*M.*, 2024 WL 4534687, at *10 (RTC not medically necessary for member with anxiety and hallucinations when member is engaged and there is no indication that symptoms impair safety).

Finally, Plaintiff claims A.A.'s continued stay was medically necessary by pointing to a letter from A.A.'s ***former*** provider who treated A.A. ***over ten months before his admission to Elevations***. *See* ECF 63 at 5-6; *see also* ECF 64 ¶¶ 74-75, ECF 66 at 34.[6] Courts routinely reject such letters where they do not assess the member's condition at the time of treatment and are written to obtain coverage. *See e.g.*, *Christine S.*, 2021 WL 4805136, at *5 (denying RTC benefits in part because the provider who wrote the letters did not see member during RTC); *S.M. v. United Healthcare Oxford*, 22-cv-262, 2024 WL 4028249, at *8 (D. Utah July 26, 2024). Instead, the record reflects that A.A. managed his symptoms well and was engaged. *Supra* at 3-4. In sum, A.A. did not have *any* suicidal or homicidal or unmanageable thoughts, inability to participate in treatment, or a functional status unmanageable at a lower level of care. *See* ECF 64 at 6; PFF ¶¶ 13, 38-56. Thus, Plaintiff has not established that continued RTC was medically necessary.[7]

### 2. *Procedural Errors Are Irrelevant to This Court's De Novo Review.*

Plaintiff argues, without support, that BCBSTX failed to engage with the MCG, citing to BCBSTX's peer-to-peer review notes memorializing its conversations with A.A.'s providers. ECF 63 at 10-12. The issue in a *de novo* review case, however, is not whether BCBSTX "undertook a selective review of the evidence;" rather, "the ultimate question [is] whether" Plaintiff is entitled

---

[6] In Plaintiff's PFF, he cites two other letters: one from provider who treated A.A. two years prior to A.A.'s stay at Elevations, and one from an educational consultant, whose role was not to treat A.A., but to assist with finding a facility. ECF 64 ¶¶ 74-75. These letters do not support the medical necessity of Elevations' treatment of A.A. after November 17, 2021 for the same reasons that the letter discussed above does not.

[7] Plaintiff fails to cite any records purportedly showing medical necessity from February 26, 2022 through A.A.'s discharge in May 16, 2023, and there are no medical records beyond September 14, 2022. *See* ECF 63 at 7, ECF 64, PFF. As Plaintiff is the party with the burden of proving his entitlement to benefits, any gaps in the record cut against him. *Oye*, 140 F.4th 833 at 837. Plaintiff therefore cannot recover benefits for February 25, 2022 to May 16, 2023, or alternatively, September 15, 2022 to May 16, 2023, as a result. *Id.*

to benefits. *C.T.*, 2025 WL 4092204, at *2 (citing *Diaz v. Prudential Ins. Co.*, 499 F.3d 640, 643 (7th Cir. 2007)) (alteration in original). "Circuit precedent also provides that 'what happened before the plan administrator is irrelevant' on *de novo* review." *Id.* (citing *Dorris*, 949 F.3d 297 at 304). Plaintiff also cannot create benefits because this Court will come to an "independent decision" on the legal and factual issues underlying the claim. *Diaz*, 499 F.3d at 643. ERISA is designed only to protect "contractually defined benefits," A.A. did not meet the Plan requirements and Plaintiff cannot create benefits. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 830 (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989)).

Based on the evidence, BCBSTX's denial of Plaintiff's request for benefits for A.A.'s RTC treatment at Elevations was correct, and Plaintiff cannot recover benefits under the Plan. This Court should therefore grant judgment in favor of BCBSTX on Count I.

### B.     BCBSTX Did Not Violate the Parity Act.

In Count II, Plaintiff argues that BCBSTX's denial violated the Parity Act because BCBSTX used medical necessity criteria requiring acute symptoms for RTC coverage versus only "sub-acute" symptoms for SNF. *See* ECF 63 at 12-15. BCBSTX is entitled to judgment on the Parity Act claim because there is no evidence of a Parity Act violation. At issue are nonquantitative treatment limitations ("NQTLs"), which "limit the scope or duration of benefits for treatment." 29 C.F.R. § 2590.712(a)-(c). NQTL comparisons must be made across mental health and medical/surgical benefits within benefit "classifications." *Id.* §2590.712(c)(2)(ii)(A). The classification at issue is inpatient, out-of-network care. *Id.*[8] The Parity Act's regulations state that

---

[8] The Parity Act's implementing regulations enumerate six classifications of benefits: (1) inpatient, in-network; (2) in-patient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. 29 C.F.R. § 2590.712(c)(2)(i)-(ii)(A). The regulations identify RTC, SNF and inpatient rehabilitation services ("IRF") as analogous services under the Parity Act. *See* Final Rules, 78 Fed. Reg. at 68246-47. The Plan does not cover IRF services. PFF ¶¶ 6-8.

RTC and SNF are analogous services. *See* 78 Fed. Reg. 68240-01, 68246-47 (Nov. 13, 2013).

To prove a facial Parity Act violation, a plaintiff must show there is no comparability between "the processes, strategies, evidentiary standards, or other factors" used to develop an NQTL for mental health and medical surgical benefits in the same classification. 29 C.F.R. § 146.136(c)(4)(i); *Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, 3:18-cv-873, 2021 WL 1026383, at *10-11 (D.S.C. Mar. 17, 2021). To prove an as-applied violation, a plaintiff must establish that an NQTL is applied more stringently to mental health benefits.[9] *Id*. As demonstrated below, BCBSTX does not violate the Parity Act because the MCG for RTC do not facially violate the Act and Plaintiff offers no evidence of an as-applied violation.

### 1. The Plan's Medical Necessity Terms and Guidelines Are Compliant With The Parity Act.

Plaintiff's Parity Act claim in Count II fails because the Plan's medical necessity terms and criteria facially comply with the Parity Act. The "processes, evidentiary standards, or other factors" used to develop these criteria are comparable because: (i) BCBSTX uses the "medical necessity" definition in the Plan for both mental health and medical/surgical services; (ii) the MCG for RTC and SNF were developed using the same processes and standards; and (iii) BCBSTX assesses medical necessity for RTC and SNF based on whether a member's symptoms require a level of care less intensive than a hospital, but more intensive than a non-24/7 setting. Thus, BCBSTX does not violate the Parity Act.

The Plan's medical necessity definition does not vary by service type. For mental health and medical/surgical services to be "Medically Necessary," they are "required, in the reasonable

---

[9] Plaintiff is incorrect that he can show BCBSTX violated the Parity Act by showing it placed "differing limitations on benefits for mental health care." ECF 63 at 12-13. Plaintiff is required to show whether BCBSTX applied comparable limitations more stringently on benefits for mental health care. *R.S. v. Quartz Health Benefit Plans Corp.*, No. 22-CV-418, 2026 WL 309629, at *10 (W.D. Wis. Feb. 5, 2026) (rejecting same argument because "the Parity Act requires insurers to apply *comparable* processes and strategies in determining applicable limitations").

medical judgment" of BCBSTX for "treatment … of a symptom or condition," and "the most efficient and economical service" able to be "safely provided." PFF ¶ 8 (like the MCG, services are covered on a continuum based on intensity). On a core level, the definition requires a member receive the least intensive treatment to meet his needs. *See id.* Additionally, the MCG for RTC and SNF are also developed from the same evidence-based approaches, editorial processes, and evidentiary standards. *Id.* ¶ 9. Thus, there is no facial Parity Act violation. *See* 78 Fed. Reg. 68245; 45 C.F.R. § 146.136; *See, e.g.*, *R.S.* 2026 WL 309629, at *9 (rejecting Parity Act claim where guidelines were developed using comparable processes); *L.D. v. United HealthCare Insurance*, 684 F.Supp.3d 1177, 1206 (D. Utah 2023).

BCBSTX's use of the MCG also does not facially violate the Parity Act because the Plan and MCG envision a continuum of care based on the nature and intensity of the member's symptoms and other factors. The MCG for RTC and SNF require that the member exhibits an acuity of symptoms requiring the 24/7 care that RTC and SNF provide. *See* PFF ¶¶ 11-16, 18, 20 (envisioning care for patients with symptoms not requiring hospital care, but too acute to safely and effectively be treated outpatient). The role of acuity is the same across the MCG for RTC and SNF without distinction. The test is not whether the member has the presence of acute symptoms (a binary, yes/no question), rather, for RTCs and SNFs, the test is: are the patient's symptoms too acute (requiring hospital care), or not acute enough (warranting a less restrictive outpatient setting). *See id.* The requirements are comparable on their face. *Michael M.*, 2021 WL 1026383, at *12.

Both the MCG for RTC and SNF recognize the appropriate level of care depends on the acuity of symptoms—not the presence of "acute" symptoms. For RTC, if a patient's risk of harm rises to imminent danger, that patient cannot be treated at RTC and needs hospital care. *See* PFF ¶¶ 11-16. Similarly, SNF care is appropriate on a continuum, where there are no acute *hospital*

needs, but a less intense program would not address the member's issues. PFF ¶ 16. Lack of acute needs does not mean the member's symptoms are not acute; rather, that the acuity of symptoms is appropriate for the intensity of services at an SNF. Because the MCG for RTC and SNF require a need for the 24/7 care provided, the "processes, evidentiary standards, or other factors" used to develop the criteria are comparable and there is no Parity Act violation. *See* 78 Fed. Reg. at 68245.

Plaintiff asserts that BCBSTX's reference to A.A.'s lack of harm to self or others, aggression, and hallucinations meant that BCBSTX required "acute" symptoms for RTC, citing to *Jonathan Z. v. Oxford Health Plans*. ECF 63 at 11. But Plaintiff fails to appreciate that BCBSTX did precisely what the MCG requires of any RTC or SNF inquiry—determining whether A.A.'s symptoms were too severe or not severe enough for continued RTC. *L.C.*, 2023 WL 1930227, at *18-20 (no Parity Act violation where denial letter cited risk of harm); *Kirsten W. v. California Physicians' Serv.*, 2:19-CV-710, 2025 WL 447890, at *18 (D. Utah Feb. 10, 2025) ("taking into account a patient's risk of harm … [does not] mean[] acute symptoms are required" and simply "because these symptoms (or lack thereof) were listed, does not mean that [the member] was required to have these symptoms"). As *L.C.* explains, BCBSTX's denial was not predicated on the lack of acute symptoms because it offers coverage on a continuum; instead, the MCG directs reviewers to assess medical necessity by deciding the appropriate level of care along this continuum. *L.C.,* 2023 WL 1930227, at *20. "Coverage is not categorically guaranteed or precluded with the presence …of certain symptoms." *Id.*

Courts reject attempts to cast the medical necessity question as a binary question of whether the member is acute or not. *See, e.g.*, *Kirsten W.*, 2025 WL 447890, at *18 (no violation where guidelines asked reviewers to assess if patient could be treated in "less intensive setting"); *cf. Howard W. v. Providence Health Plan*, 652 F.Supp.3d 1293, 1312-13 (W.D. Wash. 2023); *Julie*

14

*L. v. Excellus Health Plan, Inc.,* 447 F.Supp.3d 38, 54-55 (W.D.N.Y. 2020); *Michael M.*, 2021 WL 1026383, at *13-15; *Anne M. v. United Behavioral Health*, 2:18-CV-808, 2022 WL 3576275, at *9-11 (D. Utah Aug. 19, 2022). It is of no moment that the MCG do not use the same language to describe the MCG for RTC and SNF. *See, e.g.*, *James C. v. Anthem Blue Cross & Blue Shield*, 2:19-cv-38, 2021 WL 2532905, at *20 (D. Utah June 21, 2021) (no Parity Act violation because RTC and SNF were "comparable"); *R.S.*, 2026 WL 309629, at *9; *Julie L.*, 447 F.Supp.3d at 57. Because the MCG require a member have symptoms requiring 24/7 care, there is a "comparable application," and therefore no Parity Act violation. *See* 78 Fed. Reg. 68245 (comparable processes do not violate Parity Act).[10]

### 2.  Plaintiff Has No Evidence of An As-Applied Parity Act Violation.

Plaintiff has not adduced evidence of an "as-applied" violation of the Parity Act. ECF 63 at 14.[11] Plaintiff must compare whether BCBSTX applies medical necessity criteria more stringently to mental health benefits than to medical/surgical benefits. *See, e.g.*, *R.S.*, 2026 WL 309629, at *10; *Robert B. v. Premera Blue Cross*, 1:20-cv-187, 701 F.Supp.3d 1153, 1160 (D. Utah); *L.C.*, 2023 WL 1930227, at *18-19. Here, Plaintiff's lack of a comparison to the MCG for SNF dooms his claim. With no "as applied" comparison, Plaintiff's "as applied" claim fails. *See* § 146.136(c)(4)(i). Plaintiff fails to demonstrate a Parity Act violation. *See City of Chicago v. Barr*, 961 F.3d 882, 911 (7th Cir. 2020).

### V.  CONCLUSION

For the foregoing reasons, the Court should enter judgment in BCBSTX's favor.

---

[10] Even if Plaintiff could establish a Parity Act violation based on the MCG (he cannot), he has no remedy because he has not shown that A.A.'s treatment met the Plan's definition of medical necessity. *M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1264 (10th Cir. 2024); *see supra* § IV.A (no medical necessity).

[11] BCBSTX also notes Plaintiff appears to only attempt bring an as-applied claim, conceding the MCG are facially compliant, and judgment should be granted for this reason alone. ECF 63 at 14.

Dated: May 26, 2026

Respectfully submitted,

By: */s/ Rebecca R. Hanson*

Martin J. Bishop, 6269425
Rebecca R. Hanson, 6289672
Taylor Marcusson, 6342379
Crowell & Moring LLP
300 N. LaSalle Drive, 25th Floor
Chicago, Illinois 60611
Email: mbishop@crowell.com
Email: rhanson@crowell.com
Email: tmarcusson@crowell.com

*Counsel for Blue Cross and Blue Shield of Texas*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of May, 2026, a true and correct copy of the foregoing was served on Plaintiff's counsel of record in accordance with the Federal Rules of Civil Procedure:

Brian S. King
BRIAN S. KING, P.C.
420 East South Temple, Suite 420
Salt Lake City, UT 84111
brian@briansking.com

*Attorney for Plaintiff*

/s/ *Rebecca R. Hanson*
Rebecca Hanson

17